## KINARD v. PROCTOR.

1. WASTE—INJUNCTION.—A REMAINDERMAN has the right to have waste perpetually enjoined.

2. REAL PROPERTY—MINOR—RATIFICATION.—When a minor knows that his mother for his benefit executes a deed several months before his majority to lands she had conveyed to him and in which she holds a life estate, and receives the purchase money as the agent of his mother, and she gives him a part, and he retains the money and

remains silent for fourteen years after attaining his majority, he
will be held to have ratified and confirmed the action of his mother.

3. AN EXCEPTION alleging error in overruling findings and conclusions
of master is too general.


Before DANTZLER, J., Greenwood, August, 1903.    Affirmed.


Action by Julia V. Kinard against Susan Proctor and J.
A. Proctor.    From Circuit decree, defendants appeal.


*Mr. E. S. F. Giles,* for appellants, cites: *As to return of
consideration by minor:* 16 Ency., 293.


*Messrs. Sheppards & Grier,* contra.


March 24, 1904.    The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.    This action was commenced
on the 4th day of August, 1902, for the purpose of restraining and enjoining the defendant, J. A. Proctor, from cutting
down and destroying the growing wood and timber and committing waste on a tract of land containing 135 acres, being
situate in the now county of Greenwood (in the year 1889
being in Edgefield County), in the State aforesaid.    In the
complaint, the plaintiff asserts that the defendant, Susan
Proctor, owned in fee all of said land, but that in October,
1889, the said Susan Proctor, of her own motion, divided
out amongst her children said lands, giving to each one of
said children her deed of conveyance to said lands, but in
each deed reserved to herself a life estate in all of said lands.
That the plaintiff has purchased all of said lands (135
acres), but subject to the life estate of the said Susan Proctor.    That upon the death of the said Susan Proctor, the
plaintiff will be entitled to the possession of said lands.    That
the defendant, J. A. Proctor, claiming to act under the
authority of the said life tenant—Susan Proctor—is now
engaged in cutting down and destroying the growing timber

on said lands for the purpose of marketing the same for his own pecuniary advantage, to the great damage of said lands and of this plaintiff. That he has already cut down a considerable quantity of the growing timber, and is threatening to remove and sell the same for his own use, and threatens to continue to do so. That the defendants are entirely unable to respond to a judgment for damages if recovered against them, and could not be made to account for the damage done and threatened, and unless the Court restrains and enjoins them in the acts herein complained of, plaintiff will suffer great and irreparable injury. That plaintiff has requested said defendants to discontinue the cutting down of said timber, but they refused to do so, and she has forbidden the removal of the timber cut down, but they threaten to disregard her in the premises, &c.

The defendants, by their joint answer, deny some of the allegations of the complaint, and in a general defense they admit that Susan Proctor, on the 8th of October, 1889, did divide the 135 acres among her eight children, giving a deed to the portion assigned to each child, reserving a life estate in the whole tract of 135 acres, and they admit that the plaintiff has received deeds for all the parcels of land allotted, except the defendants, J. A. Proctor and G. E. Proctor, and some others. In articles V. and VI. of the answer it is stated as follows:

"V. That some time thereafter the husband of the plaintiff, C. L. Kinard, now deceased, applied to the defendant, Susan Proctor, to buy for his wife, the plaintiff herein, the tract of land owned by the said G. E. Proctor, and was told by the defendant, Susan Proctor, that the same was owned by the said G. E. Proctor, and that he was under age; that the said C. L. Kinard insisted on taking a conveyance from the said Susan Proctor and told her that it would be all right for her to convey the same to him, provided she surrendered the deed already executed to the said G. E. Proctor, which had not been recorded, and she consented to do so, and did execute to the wife of the said C. L. Kinard a deed prepared

by him, or some one for him, purporting to convey a fee simple title to the plaintiff herein, reserving to herself a life estate in said land, which she had already conveyed to her said son, G. E. Proctor.

"VI. That the said conveyance by the defendant, Susan Proctor, to the plaintiff was null and void, and conveyed to her no interest in the said tract of land."

It was also claimed in said answer that the timber cut by the defendant, J. A. Proctor, was cut from the tract of twenty or twenty-four acres which Mrs. Susan Proctor had conveyed to her son, G. E. Proctor, on 8th October, 1889, by the consent of said G. E. Proctor. His Honor, Judge Watts, granted an order restraining the defendant, J. A. Proctor, from cutting down and selling timber until the further order of Court. By consent of all parties, all the issues of law and fact were referred to W. J. Moore, Esq., as master for Greenwood County. He took all the testimony and made his report to the Court, having decided all the issues of law and fact in favor of the defendants. Exceptions were duly presented to said report, and the exceptions came on to be heard before his Honor, C. G. Dantzler, together with the pleadings and the testimony. After a full argument, he reversed the report of the master in the following decree:

"This is an action instituted by the plaintiff against the defendants above named, to enjoin the said defendants from committing waste on the lands described in the complaint. It appears that Mrs. Susan Proctor, one of the defendants, received as her distributive share in the estate of her husband a certain tract of land containing one hundred and thirty-five (135) acres, more or less, situate in what is now Greenwood County, then the county of Edgefield, in the State of South Carolina. That Mrs. Proctor, who was the mother of several children, divided this tract of land between her said children, and gave to each a deed to the portion of the lands which she had set apart to each in fee, reserving for herself, in each instance, a life estate.

"It appears further that, after this, the children executed deeds conveying their interest in fee in remainder to the plaintiff, Mrs. Julia V. Kinard, full consideration being paid. J. A. Proctor, one of the defendants, it seems, was in possession of the lands under the authority of the life tenant, Susan Proctor.

"It is alleged in the complaint, and the testimony shows, that J. A. Proctor has been engaged in cutting down growing timber on the lands for the purpose of selling the same and for his own pecuniary advantage, to the great damage of the lands; that he has cut down already the greater portion of the timber, and has removed a considerable part of it and sold some of it, and claims the right to cut timber from any portion of the lands.

"It appears that he has built a house for himself on a tract of land which he owns, and which joins the lands in question, largely from the timber cut from the lands described in the complaint, of which the plaintiff is the owner in fee, subject to the life estate of Mrs. Susan Proctor.

"It further appears that the principal value of the lands is the timber thereon, and the cutting down of the same greatly depreciates the value and the interest of plaintiff therein.

"It also appears that the defendant, J. A. Proctor, threatens to continue his conduct in the particulars herein stated, and refuses to stop, although requested by Mrs. Kinard on several occasions before suit was instituted to desist.

"The matter came on to be heard before me in open Court at Greenwood, S. C., on the 14th day of August, 1903, on the report of the master, the testimony taken and the pleadings and the exceptions to the master's report on behalf of the plaintiff. No exceptions on behalf of defendants.

"The question was fully argued by counsel representing both plaintiff and defendants. The contention of the defendants, as I gather from the answer filed, and from the argument of counsel representing defendants, is that G. E. Proctor, also called Eli Proctor, was under age at the date he received the deed from his mother to his portion of the lands,

the date of which deed is October 8th, 1889, and conveyed to him a tract of land of about twenty acres, reserving a life estate in Mrs. Susan Proctor; and it is contended in argument and alleged in the answer, that all of the wood and timber cut by the said J. A. Proctor was from his twenty-acre tract, known as the G. E. Proctor or Eli Proctor tract, and that no timber or wood has been cut from any other portion of those lands by either of the defendants; that Mrs. Kinard, the plaintiff, is not the owner of this particular twenty-acre tract; and it is alleged in paragraph 5 of the answer that the husband of the plaintiff, now dead, applied to Susan Proctor to buy for his wife, the plaintiff, this tract of land, and was told by the said Susan Proctor that the land was owned by her son, G. E. Proctor, who was under age; that thereupon Kinard insisted in taking a conveyance from Mrs. Proctor, and told her that would be all right for her to convey the land to him, provided she surrendered the deed which she had already executed to her son, G. E. Proctor, which was not recorded, and that she consented to do so, and did execute such deed to Mrs. Kinard, reserving to herself a life estate; and in paragraph 6 of said answer it is alleged that this deed was null and void, and conveyed no interest in the said tract of land.

"In this connection it is sufficient to say here that there is no testimony to support the allegations of paragraph 5 of the said answer. G. E. ·Proctor himself, in his testimony, gives quite a different version of this transaction. The testimony of Mr. B. B. Kinard, which comes up without exception on part of defendants, shows that plaintiff's husband, some fourteen years ago, during his lifetime, bought this identical tract of land from Eli Proctor, and says he saw him pay Eli Proctor, also called G. E. Proctor, the purchase money for this twenty-acre tract, but don't remember the exact amount, and says that before this transaction, his brother had previously bought the land from Eli's mother; that his mother said that Eli had to have some money to go on, and the only way to get it was from this land, and that

Eli was present when this conversation took place. The plaintiff, Mrs. Kinard, says, without objection, that she is the owner of this land, and that she has a plat to it and a deed executed by G. E. Proctor, which was executed a few years before her husband's death, which deed she says she could not find after search for it, and that the purchase price was paid to G. E. Proctor. These seem to be reputable witnesses of character and standing in their community. In this connection, Mr. G. E. Proctor says that he never made a deed to the twenty-acre tract of land to Mrs. Kinard, and that he gave his brother permission some two years ago to cut timber on this tract of land. He admits signing the receipt introduced in evidence, which he signed "G. E. Proctor, agent for Susan Proctor," and which recites that $125 has been paid in full for the purchase price of this twenty acres of land. On his cross-examination, Mr. Proctor says that this money was paid for the twenty-acre tract, that it was paid to him for his mother, and that he doesn't know whether his mother was present or not when he received the money from Mrs. Kinard; and that his mother, at that time, made Mrs. Kinard a deed to the twenty acres of land, and that he knew at that time what the money was being paid for.

"Take the view of the case as presented by the testimony of G. E. Proctor, and it seems to me, upon that alone, without reference to the other testimony in the case, that defendants' contention must fail. At the date of this transaction, G. E. Proctor was almost twenty-one years old. He knew that his mother was conveying his interest in the land to Mrs. Kinard; he knew that Mrs. Kinard believed that she was buying his interest in this land; and that she was paying for this interest the sum of one hundred and twenty-five dollars. It was for his benefit that the sale was being made; this he does not deny. He admits that he knew he had an interest in the land in fee, and admits that he knew that this was the interest which his mother by her deed undertook to convey to Mrs. Kinard. His mother was not present when

the money was paid, but Mr. Proctor receives this money in his own hands, and himself signs a receipt therefor, styling himself "agent" for his mother in this receipt. He further says that he gave the money voluntarily to his mother and received a part of it—how much does not appear—for himself. He has never returned or offered to return any part of this money. It does not appear what disposition was made of it, whether he invested it in other property or what. Very soon after this he reaches his majority, and for almost fourteen years he has never made any complaint or brought into question in any way the transaction. It is only after suit is brought that he, for the first time in all these years, brings the matter into question. If these facts be true, and Mr. Proctor himself says that this is the case, it seems clear that he should not now be heard to complain. If G. E. Proctor did not mean, in accepting a part of the purchase money of this tract of land from his mother, and at the hands of Mrs. Kinard, to confirm the acts of his mother, he intended and meant to commit a fraud on Mrs. Kinard, which this Court will not sanction or permit. Mr. Proctor, by his acquiescence in this transaction for nearly fourteen years after coming of age, and his accepting a part of the purchase money and retaining the same, ratifies and confirms the sale. G E. Proctor, on reaching his majority, had the right to avoid this transaction. It was not void, but only voidable. In the very nature of things, an act which is only voidable, strictly speaking, needs no confirmation, but it stands good until it is avoided, and where there is an effort made to avoid an act, it is important to see whether there has been confirmation. If there had been confirmation, then the matter has passed beyond the power of the party to avoid it. *Ihley* v. *Padgett,* 27 S. C., 302.

"In the case of *Norris* v. *Vance,* cited with approval in the case of *Ihley* v. *Padgett, supra,* it is held that there may be confirmation of an infant's act in either of *three* ways: 'There must be after he has attained his majority with full knowledge of his rights, (1) acquiescence from which assent

may be fairly inferred, (2) an adequate benefit enjoyed which has grown directly or indirectly out of the contract, or (3) some direct or expressed assent.'

"The case at bar falls under the *first two* classifications. There has been an adequate benefit enjoyed, growing directly out of the contract of sale, and in addition thereto acquiescence for nearly *fourteen years.* In the case of *Belton* v. *Briggs,* 4 DeS., page 471, the Court held that Briggs, although a minor, was bound by a sale made of his interest in a tract of land by his mother and *two* brothers, which was made with his knowledge and approbation. In the case at bar, if we take the testimony of G. E. Proctor only, it appears that he also knew what was being done, and, like Briggs, it was done with his approbation and approval. Here, if his testimony only is taken, his mother undertook to act for him and, as did the mother of Briggs, he received a part of the purchase money from his mother, and all of it at the hand of Mrs. Kinard—his mother not being present. With full knowledge of the whole transaction, he remains silent thereafter and after his majority, for *fourteen years,* when he undertakes for the first time in this suit to question the transaction. To permit him to do so would be unconscionable and assist him in perpetrating a fraud on the plaintiff. While infants should be protected from the consequences of their inexperience and immaturity of judgment, a Court should not forget that their protection does not require the overriding of the legal rights of persons who have dealt with them in good faith. If, on reaching his majority, G. E. Proctor had refused to be bound by this transaction, had shown a disposition to avoid the same on account of his alleged minority, a different question would have been presented. This was his right, and with full knowledge of his rights he chose to affirm and ratify what was done. It is, therefore, as binding on him after ratification and confirmation as on any one else, and by reason of his so ratifying and confirming what was done, it is now beyond his power, and at this late date, to bring it into question.

"I hold that Mrs. Kinard, from all the testimony submitted, is the owner of this twenty-acre tract in fee, subject to the life estate of Mrs. Proctor.

"I further hold that the testimony shows clearly that J. A. Proctor has been cutting wood and timber promiscuously from all parts of the land described in the complaint, asserting a right to do so and threatening to continue. Mrs. Kinard, as the owner in fee in remainder, is entitled to the protection of the Court to prevent the denuding this land of the growing timber.

"It is, therefore, the judgment of the Court, that the exceptions to the report of the master be, and are hereby, sustained, and the master's report reversed, overruled and set aside.

"It is further ordered and adjudged, that plaintiff is entitled to the relief set out in her prayer herein, and that the said defendants, and each of them, be, and hereby are, perpetually enjoined and restrained from committing any acts of waste on the premises described in the said complaint, and from cutting down and removing the timber from said premises."

Thereupon, the defendant appealed from said decree upon the following exceptions:

"I. It was error in the Circuit Judge to overrule the findings of fact of the master and to find independently as to fact, viz: 'It is alleged in the complaint, and the testimony shows that J. A. Proctor had been engaged in cutting down growing timber on the lands for the purpose of selling the same and for his own pecuniary advantage, to the great damage of the lands; that he has cut down already the greater portion of the timber, and has removed a considerable portion of it and sold some of it, and claims the right to cut timber from any portion of the lands.'

"II. It was error to find as an independent fact, overruling the master: 'It further appears that the principal value of the land is the timber thereon, and the cutting down of the same greatly depreciates the value and interest of the plaintiff

therein.' It is respectfully submitted that the evidence shows that there was very little timber on the land, and that the land was worth more cleared than with the timber on it.

"III. It was error to hold as a fact that G. E. Proctor, or Eli Proctor, acquiesced and consented to the conveyance by his mother to Mrs. Kinard, on the 31st of October, 1889, and received a part of the consideration, when on the 8th day of November, 1889, he receipted for the purchase money paid to his mother, through him as her agent, and it was error to hold that, 'very soon after this he reached his majority, and for almost *fourteen years* he has never made any complaint or brought into question in any way the transaction. It is only after suit is brought that he, for the first time in all these years, brings the matter into question.' It is respectfully submitted that G. E. Proctor, or Eli Proctor, has not now brought the matter into question, he is not a party to this suit, and the question of title only arises collaterally, the defendant, J. A. Proctor, claiming to act under the authority of G. E. or Eli Proctor in cutting wood on the land.

"IV. It was error to hold that G. E. or Eli Proctor made a complete ratification and confirmation of the deed of Susan Proctor, his mother, to Mrs. Kinard, by receiving from Mrs. Kinard the purchase money, $125, for his mother, as her agent, and receipting for the same by himself as agent for his mother, and then receiving a part of the money as a gift from his mother.

"V. It was error to hold that G. E. or Eli Proctor acquiesced for fourteen years in this transaction, when the record shows that Mrs. Proctor, the life tenant, has always been in possession of the said tract of land, and that Mrs. Kinard is not now in possession, has never been in possession, and has never set up any claim to this land until this suit was brought.

"VI. It was error to hold that there was no testimony to support the allegations of paragraph 5 of the answer, thereby overruling the findings of fact of the master.

19—68

"VII. It was error to hold that Mrs. Kinard is the owner of the twenty-acre tract of land in fee subject to the life estate of Mrs. Proctor, but he should have sustained the findings and conclusions of the master in regard to the same, and held that G. E. Proctor or Eli Proctor was the owner in fee of the said tract of land, subject to the life estate of his mother.

"VIII. It was error in the Circuit Judge to overrule the findings of fact and conclusions of the master, but he should have confirmed the same in all particulars."

We will now pass upon the exceptions in their order.

1. An examination of the testimony fails to support this exception. Certainly his (J. A. Proctor) own testimony, to a large extent, supports this finding of fact, for he admits that, under the permission of his brother, G. Eli Proctor, he did cut timber, and also that he sold some himself and through others. Much timber has already been cut, and until the arm of the law reached out to stop him, he claimed the right to cut this timber on any part of the land. This exception is overruled.

2. It accords with common sense that the original forest and even the second growth adds much to the value of lands in such a county as Greenwood. Whatever value attaches to this timber belongs to the owner in fee. This exception is overruled.

3. So far as this third exception is concerned, it may be remarked, that although G. Eli Proctor is not a formal party to this action, that his brother, J. A. Proctor, who is a party, bases his right to cut timber on the lands— twenty acres—which Susan Proctor conveyed to him, G. Eli Proctor, on the 31st October, 1889, upon the express authority of said G. Eli Proctor, and that both parties (J. A. & G. Eli) so testify. It becomes necessary to answer this testimony by showing that although Mrs. Susan Proctor did execute a deed to G. Eli Proctor on the 8th day of October, 1889, while G. Eli Proctor was a minor, *in his twenty-first year,* yet that the deed was never recorded in

the office of the register of mesne conveyance, and that on the 31st day of October, 1889, owing to the *necessities of said G. Eli Proctor,* in his presence, with his full knowledge of his rights, for a full and valuable consideration (which consideration was paid, every dollar, into his hands and receipted for by him), Mrs. Susan Proctor conveyed said land to the plaintiff, which deed was placed on record in March, 1890, in the office of the register of mesne conveyance for Edgefield County, S. C., which at that date was the proper county in which such deed should have been recorded. All this was done a little more than four months before G. Eli Proctor reached his majority. To show how completely G. Eli Proctor so testified, we will reproduce this testimony, because, to our mind, as was the case with the Circuit Judge, it has a crushing effect upon the rights of said G. Eli Proctor in this land, and destroys any right on his part to authorize J. A. Proctor or anybody else to destroy timber growing on this land.

"G. E. Proctor, sworn, says: I am the G. E. Proctor spoken of in the testimony. Receipt shown me, that is my name signed to it. That money was received for my mother. Never got any money from Mrs. Kinard on account of that tract of land for myself, but I got a part of the money from my mother; my mother gave me some of it. I never made a deed to any one for this tract of land. I sold Mrs. Kinard another tract of land, 123 acres. I knew the boundaries of the twenty-acre tract. J. A. Proctor cut wood from that tract. I don't know that any wood was cut from any other tract. I live fifteen miles from there. There was some stock timber on twenty-acre tract. I gave my brother permission to cut this. My mother is seventy-four years old and she lives with me. She is too feeble to come here to-day.

"Cross-examined: I signed this receipt for my mother. That money was paid for the twenty-acre tract. It was paid to me for her, that is the twenty-acre tract, known as the Eli Proctor tract. Don't know how much of the money she gave me. I don't know whether my mother was present or

not when I received the money from Mrs. Kinard. My mother made Mrs. Kinard at that time a deed to the twenty acres. I knew what the money was being paid for.

"Redirect: I was born February 17th, 1869. G. E. Proctor."

While it is admitted that G. Eli Proctor lacked nearly four months of reaching his majority when this deed was executed to the plaintiff by Mrs. Susan Proctor, yet for more than thirteen years he has remained silent, never in all that time returning, or offering to return, the purchase money or seeking to upset the said deed. The authorities cited in the decree of the Circuit Judge are ample to bind the said G. Eli Proctor to the deed of conveyance made by his mother to the plaintiff. When a man can speak, and should speak, before another takes a step by which a claim to property is asserted in violation or disregard of his rights in said property, he shall ever afterwards hold his peace. It is true, he was a minor lacking a few months of his majority, yet he helped to consummate the sale of his lands just as was done by a minor in the case of *Ihley* v. *Padgett,* 27 S. C., 300, 3 S. E., 468. This last cited case is authority for the position that the life estate of his mother, Mrs. Susan Proctor, in these lands would not protect G. Eli Proctor from his failure to take steps at some time within the thirteen years after he had attained his majority to vacate this deed. For the Court there said, at page 304: "But it was urged that there was such obstacle [the mother's life estate] ; that the plaintiff being only a remainderman, had no right to claim actual possession of any portion of the Rice Hope plantation until after the death of Mrs. Ihley, the life tenant, and as a consequence he could not make application to have his deed annulled until that time (1885), and that being the case, it could not properly be said that he 'acquiesced' in that which it was out of his power to avoid. It may be that the death of the mother was the time at which the land was to be divided amongst the children. But we do not understand that the plaintiff was thereby precluded from making application

to set aside his deed, signed, as alleged, when he 'was under age,' at any time after he attained his majority. The two matters in point of time are not necessarily identical. He had a saleable interest in Rice Hope during the life of his mother, and having conveyed that interest to Allen, we know of no reason why he could not have assailed the deed, executed when he was under age, at any time after he came of age, and that whether his mother was living or dead. In the view, that it was his intention to make that question, it was due to fair dealing to the purchaser and all concerned that it should have been made promptly after he attained his majority." This exception is overruled.

4. From the testimony it is clear that G. Eli Proctor made a complete ratification and confirmation of the deed in question to the plaintiff. This and the next (the 5th) are disposed of in our discussion of the third exception. Accordingly they are overruled.

6. We have carefully examined the testimony, and we fail to find any error in the finding of the Circuit Judge that there was no testimony in support of the V. article of the answer. We have quoted it in full. Mrs. Susan Proctor was not examined as a witness, and she was the person with whom it was alleged that the agreement was made. G. Eli Proctor does not state any such agreement in his testimony. This exception is overruled.

7. From what we have already held, it is clear that the deed of Mrs. Susan Proctor to the plaintiff for the twenty acres belonging in October, 1889, to G. Eli Proctor, ratified and confirmed by G. Eli Proctor, operates to carry the fee in the twenty acres of land to the plaintiff. This exception is overruled.

8. This exception is too general to require notice. It is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.